## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## ALBANY DIVISION

| | | |
|---|---|---|
| KENNETH E. BULLINGTON, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | CASE NO.: 1:15-CV-176 (WLS) |
| M.C. PRECISE, DMD; | : | |
| JON F. STRENGTH, DMD; | : | |
| DAVID N. STRENGTH, DMD, and | : | |
| MICHAEL C. PRECISE, DMD, PA | : | |
| d/b/a DIXIELAND DENTAL, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ORDER

Before the Court is Defendants M.C. Precise, D.M.D.; Jon F. Strength, D.M.D.; David N. Strength, D.M.D.; and Michael C. Precise, D.M.D., P.A. d/b/a Dixieland Dental's[1] Motion to Dismiss (Doc. 5). Plaintiff Kenneth E. Bullington filed the instant action alleging professional negligence and vicarious liability against Dixieland Dental on September 23, 2015 in the Superior Court of Dougherty County, Georgia. (Doc. 1-1 at 8–25.) Dixieland Dental removed the case to this court on October 28, 2015 on the basis of diversity jurisdiction. (Doc. 1 at 2–4.) Dixieland Dental filed the instant motion to dismiss the case on November 4, 2015. (Doc. 5.) Bullington filed a response opposing the Motion on February 23, 2016 (Doc. 12) and an amended response on February 26, 2016 (Doc. 17). Dixieland Dental filed a reply on March 8, 2016. (Doc. 19.) Bullington requested (Doc. 20) and was granted (Doc. 21) leave to file a sur-reply, which he did on March 30, 2016 (Doc. 22). The Motion to Dismiss (Doc. 5) is now ripe for review.

Bullington has also filed a Request and Application for Hearing on Defendant's Motion to Dismiss. (Doc. 15.) The Court finds that a hearing on the Motion to Dismiss is unnecessary and **DENIES** Bullington's Motion (Doc. 15).

---

[1] Hereinafter collectively referred to as "Dixieland Dental" or "Dixieland."

## FACTUAL BACKGROUND

Plaintiff Kenneth E. Bullington is a survivor of oral cancer. (Doc. 1-1 at 11.) In 2009 he underwent several rounds of radiation therapy which eliminated the cancerous tumor. (*Id.* at 11–12.) Bullington is now cancer free. (*Id.* at 12.)

Following his treatment, Bullington sought out dental care. He worked as a travelling salesman and became familiar with Dixieland Dental through a large billboard in Alabama which advertised the business and its "1-800" phone number. (Doc. 12-14 at 1.) Bullington first saw Dr. M.C. Precise at Dixieland on July 28, 2010 to make a treatment plan. (Doc. 1-1 at 12.) He returned on August 11, 2010 to have two teeth extracted by Dr. Jon F. Strength. (*Id.* at 13.) Bullington alleges that Strength did not prescribe or refer Bullington for hyperbaric oxygen, consult with Bullington's radiation oncologist, receive proper informed consent from Bullington, or obtain a proper medical history. (*Id.*)

Bullington was seen again by either Dr. Jon F. Strength or Dr. David N. Strength on September 22, 2010, October 27, 2010, November 17, 2010, December 8, 2010, and March 16, 2011. (*Id.* at 14.) He saw Dr. M.C. Precise again on May 11, 2010. (*Id.*) On none of these visits was Bullington's jaw x-rayed; nor was he referred for hyperbaric oxygen. (*Id.*)

Bullington visited a second dentist's office, King Family Dental Care, in Albany, Georgia on September 25, 2012. (*Id.* at 15.) During a series of subsequent visits, he had twelve teeth extracted. (*Id.*) He visited Dixieland again on September 10, 2013, where Dr. David N. Strength performed a panoramic x-ray. (*Id.*) Strength noted that the x-ray was normal; however Bullington contends that, at the time, he was developing an area of necrosis in his right mandible. (*Id.*)

In 2014, Bullington began experiencing serious pain along his right mandible. (*Id.* at 16.) He was diagnosed with osteoradionecrosis, a condition consisting of bone death due to radiation and loss of blood due to infection. (*Id.* at 17.) Ultimately, the disease led to a mandibulectomy, suprahyoid neck dissection, and a tracheostomy, and three other surgeries. (*Id.* at 18–19.) Bullington contends that Dixieland's failure to consult with his oncologist, receive informed consent, prescribe hyperbaric oxygen, and perform and accurately read an x-ray on his jaw constituted professional negligence and was the proximate cause of his subsequent diagnosis and surgeries. (*Id.* at 20–22.)

2

Dixieland Dental is a registered entity in Alabama, with its sole office located in Midland City, Alabama. (Doc. 5-1 at ¶¶ 2–3.) It advertises on two local TV stations located in Dothan, Alabama and on a local call-in cable TV show. (Doc. 5-1 at ¶¶ 5, 9.) The two local TV stations broadcast over the air into Georgia. (Docs. 12-12; 12-10). However, in the advertisement, Dixieland says "call today to see why south Alabama chooses Dixieland Dental." (Doc. 12-6.) The rest of Dixieland's advertising is solely in Alabama. It has a billboard in Alabama (Doc. 12-3) and sponsors sports teams in Alabama (Doc. 5-1 at ¶ 8). It does not mail paper marketing into Georgia, bill or receive payments from Georgia, or pay for any other sort of advertising in Georgia. (*Id.* at ¶¶ 10–11.)

However, Dothan, Alabama is near the Georgia border and Dixieland is the dentist office of choice for a number of Georgia residents. Fourteen percent of Dixieland's patients report a Georgia zip code.[2] (Docs. 5-1 at ¶ 12; 12-11; 12-7.) While no bills are sent across state lines, Dixieland does call into and receive calls from patients in Georgia regularly. In 2015, an average of 359 calls were made to Dixieland from Georgia per month and 55 calls were made from Dixieland into Georgia per month. (Doc. 12-4.) Bullington himself spoke with Dixieland by phone several times to schedule appointments. (Doc. 12-14 at 2.)

Bullington has also produced a document he alleges was created by Dixieland which shows general directions to Dixieland from cities in Alabama, Georgia, and Florida. (Doc. 12-8.)

At some point prior to the instant litigation, Bullington and Dixieland began discussing a potential settlement. On August 6, 2015, they entered into an agreement to "toll the running of any and all statutes of limitations or statutes of repose which may be applicable to any claims . . . ." (Doc. 12-9.) Dixieland noted it "would prefer to avoid having a lawsuit filed against it," so Bullington agreed to forego filing a lawsuit while the action was purportedly tolled. (*Id.*) The original agreement proposed by the parties only purported to toll the statute of limitations; however, it was revised by Bullington's counsel to include the statute of repose as well. (Doc. 19-1.) Ultimately the settlement efforts failed and Bullington

---

[2] Bullington estimates that they account for $462,000 of revenue annually based on the total revenue of $3.3 million Dixieland brings in annually. (Doc. 17 at 3 n.3.) The Court is unwilling assume that the average Georgia customer brings in the same amount of revenue as the average non-Georgia customer in the absence of evidence. *See Thomas v. Strange Eng'g, Inc.*, No. CV 111-074, 2012 WL 993244, at *3 (S.D. Ga. Mar. 22, 2012) (refusing to accept estimate of percentage of sales into Georgia based on percentage of U.S. population living in Georgia).

filed suit against Dixieland Dental on September 23, 2015 in the Superior Court of Dougherty County, Georgia. (Doc. 1-1 at 8–25.)

## DISCUSSION

## I.   Subject-Matter Jurisdiction

### a.   Standard of Review

Dixieland Dental first asserts that under Federal Rule of Civil Procedure 12(b) the Court is without subject-matter jurisdiction to consider Bullington's claim due to Georgia's five-year statute of repose for medical malpractice actions. O.C.G.A. § 9-3-71(b). "Rule 12(b)(1) permits a party to assert by motion the defense that the Court is without subject-matter jurisdiction to consider a claim."[3] *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009). A challenge may be either facial or factual. "Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint, and the district court takes the allegations as true in deciding whether to grant the motion. Factual attacks challenge subject matter jurisdiction in fact, irrespective of the pleadings." *Morrison v. Amway Corp.*, 323 F.3d 920, 925 n.5 (11th Cir. 2003) (citations omitted). "When considering such challenges, the court must . . . take the complaint's allegations as true. However, where a defendant raises a factual attack on subject matter jurisdiction, the district court may consider extrinsic evidence such as deposition testimony and affidavits." *Carmichael*, 72 F.3d at 1279. Dixieland's challenge is facial. Although the affidavit of Michael C. Precise, D.M.D. is attached as an exhibit to the Motion, it only addresses Dixieland Dental's personal jurisdiction defense. Dixieland has not introduced any extrinsic evidence addressing their subject-matter defense. *See Barnett v. Okeechobee Hosp.*, 283 F.3d 1232, 1238 (11th Cir. 2002)

---

[3] Though Dixieland Dental's Motion only mentions Rule 12(b) (Doc. 5 at 3) and not specifically 12(b)(1), it is clear from the language of the Motion that it intends to make this a subject-matter challenge. (Doc. 5 at 4 ("This Court has no subject[-]matter jurisdiction"), 5 ("This Court, sitting in diversity jurisdiction, cannot exercise subject[-]matter jurisdiction over a nonexistent state claim").) It is unclear the procedurally correct way to raise a statute of repose. At times it is raised as an affirmative defense analogous to a statute of limitations under Rule 8(b). *Montgomery v. Wyeth*, 580 F.3d 455, 468 (6th Cir. 2009). Other times it's raised under Rule 12(b)(6) as making plaintiff's claim unable to be granted relief. *Witham v. Whiting Corp.*, 975 F.2d 1342, 1345 (7th Cir. 1992). Still other times it's raised under Rule 12(b)(1). *Huddleston v. United States*, 485 F. App'x 744, 745 (6th Cir. 2012). Bullington has not challenged Dixieland's characterization. (*See* Docs. 17; 22). Dixieland is correct that Georgia's statute of repose is jurisdictional. "[T]ime limits can either completely extinguish [a] right or simply bar the remedy for enforcement. In the former case, jurisdiction does not exist because the cause of action has been totally extinguished." *Ellis v. Gen. Motors Acceptance Corp.*, 160 F.3d 703, 706 (11th Cir. 1998). The statute of repose at issue here would completely extinguish Bullington's right. *Wright v. Robinson*, 426 S.E.2d 870, 871–72 (Ga. 1993).

(considering 12(b)(1) claim facially when, in the same motion, defendants also made factual challenge).

**b.    Analysis**

Under Georgia law, "*in no event* may an action for medical malpractice be brought more than five years after the date on which the negligent or wrongful act or omission occurred." O.C.G.A. § 9-3-71(b) (emphasis added). The statute is one of ultimate repose, rather than limitation. "A statute of limitation is a procedural rule limiting the time in which a party may bring an action for a right which has already accrued. A statute of ultimate repose delineates a time period in which a right may accrue. If the injury occurs outside that period, it is not actionable." *Hill v. Fordham*, 367 S.E.2d 128, 131 (Ga. Ct. App. 1988). Upon expiration, it acts "as an unyielding barrier to a plaintiff's right of action." *Wright v. Robinson*, 426 S.E.2d 870, 871–72 (Ga. 1993) ("The statute of repose destroys the previously existing rights so that . . . the cause of action no longer exists.").

Bullington alleges that he had two teeth extracted by Jon F. Strength on August 11, 2010. (Doc. 1-1 at 12–13.) The instant action was not filed until September 23, 2015, outside of the five-year statute of repose. The complaint does not allege any facts which would allow the statute to be extended. (*See* Doc. 1-1.)

However, in his brief in opposition, Bullington asserts that the parties had entered an agreement which purported to temporarily toll the statutes of limitations and repose in an effort to settle Bullington's claims. (Doc. 17 at 13.) Bullington offered a copy of the agreement as an exhibit. (Doc. 12-9.)

A complaint "must contain . . . a short and plain statement of the grounds for the court's jurisdiction . . . ." F.R.C.P. 8(a)(1). Because this is a facial challenge to jurisdiction, the Court does not look beyond the four corners of the complaint. Any claims related to the extractions on August 11, 2010 are outside of the statute of repose and the complaint provides no grounds for giving the Court jurisdiction. (*See* Doc. 1-1.)

When jurisdiction is not affirmatively pleaded in the complaint, the plaintiff should be given leave to amend the complaint before it is dismissed. *Kaufman v. W. U. Tel. Co.,* 224 F.2d 723, 725 (5th Cir. 1955).[4] "Only when . . . the pleader cannot truthfully amend to allege

---

[4] The Eleventh Circuit has adopted as binding precedent all decisions issued by the former Fifth Circuit prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

subject matter jurisdiction should the court dismiss without leave to replead." 5B C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 1350 (3d ed. 2004).

Georgia law provides only limited ways through which a plaintiff may bypass O.C.G.A. § 9-3-71(b). Unlike a statute of limitations, a statute of repose may not be tolled by a delayed discovery, infancy, incompetency, or fraud. *Simmons v. Sonyika*, 614 S.E.2d 27, 30 (Ga. 2005). However, a defendant may be equitably estopped from asserting a statute of repose in two ways. First, if there is "evidence of defendant's fraud" in concealing information needed to bring the claim and second, based on "other conduct on which the plaintiff reasonably relied in forbearing the bringing of a lawsuit." *Esener v. Kinsey*, 522 S.E.2d 522, 524 (Ga. Ct. App. 1999); *see also Hill v. Fordham*, 367 S.E.2d 128, 132 (Ga. Ct. App. 1988). Dixieland Dental relies on language in subsequent cases which appears to have eliminated the "other conduct" catch-all. *See Miller v. Vitner*, 546 S.E.2d 917, 919 (Ga. Ct. App. 2001) ("For equitable estoppel to prevent the assertion of the statute of repose, only intentional fraud of the physician preventing the plaintiff from discovering the injury will give rise to the applicability of such doctrine.").

Yet *Miller* itself cited *Esener* and did not purport to limit it. *Id.* Rather, the *Miller* court clarified only that the fraud of a non-party cannot be imputed to a defendant. *Id.* at 918. The holding furthers the underlying rationale of the rule: to prevent a defendant from benefiting by "caus[ing] the plaintiff to miss the deadline imposed by the statute of repose and then us[ing] the same statute to defeat the plaintiff's otherwise viable action." *Rosenberg v. Falling Water, Inc.*, 709 S.E.2d 227 (Ga. 2011). To act as a deterrent, the defendant must have knowledge of their improper conduct. *See Macfarlan v. Atlanta Gastroenterology Associates, Inc.*, 732 S.E.2d 292, 296 (Ga. Ct. App. 2012).

While the Court is unable to find any cases in which a Georgia court has considered what "other conduct" is sufficient to equitably estop a defendant from raising the statute of repose, the *Hill* court approvingly cited *Bomba v. W.L. Belvidere, Inc.*, 579 F.2d 1067 (7th Cir. 1067) in which the defendant sold plaintiff plots of land without filing the required disclosures. *Hill*, 367 S.E.2d at 132. The plaintiffs sought to rescind the sale and were told by the defendant that they could do so, but it would take some time for the money to be refunded. *Bomba*, 579 F.2d at 1069. No refund came and the plaintiffs eventually filed suit, but the statute of repose had run. *Id.* The Seventh Circuit held that the defendant was

estopped from raising the repose defense because its promise to refund caused the plaintiffs to miss the filing deadline. *Id.* at 1071. "Estoppel arises where one, by his conduct, lulls another into a false security, and into a position he would not take only because of such conduct." *Id.*

The parties allegedly entered into a tolling agreement on August 6, 2015. (Doc. 12-9 at 3–4.) The agreement purported to toll "any and all statutes of limitations or statutes of repose . . . ." (*Id.* at 1.) In exchange, Bullington agreed to "forego the filing of any lawsuit" against Dixieland for the duration of agreement. (*Id.* at 2). The agreement was "conduct on which the plaintiff reasonably relied in forbearing the bringing of a lawsuit." *Esener*, 522 S.E.2d at 524. The agreement was made intentionally, as required by Georgia courts, in that Dixieland intended to enter in it and did not somehow negligently enter into the agreement. *See Hutcherson v. Obstetric & Gynecologic Associates of Columbus, P.C.*, 543 S.E.2d 805, 807 (Ga. Ct. App. 2000). The law only requires that the conduct itself be intentional, not that it be done for the purpose having a plaintiff's case dismissed. *See generally id.*

A finding of estoppel here would be consistent with the rationale of the estoppel rule. Dixieland should not be allowed to benefit from causing Bullington to miss the statute of repose then moving to dismiss on that ground. *Rosenberg*, 709 S.E.2d at 230. The agreement no doubt "lull[ed Bullington] into a false security" and caused him to delay the filing of the instant action. *Bomba*, 579 F.2d at 1071. The documents filed by Bullington suggest Dixieland Dental is now estopped from claiming the statute of repose as a defense.

It makes no difference that Bullington's counsel proposed to add repose to the tolling agreement. (Doc. 19-1.) In most estoppel cases, the plaintiff is at least partially responsible for the delay. In *Bomba*, for instance, the plaintiffs could have filed suit before the statute of repose expired regardless of the defendant's promise of a refund. Still, the agreement here benefited Dixieland by postponing any lawsuits and it was both parties purporting to toll the repose period which caused Bullington's delay. (Doc. 12-9.) Dixieland cannot now be allowed to benefit from that delay.

Accordingly, Dixieland Dental has made a facial challenge to the Court's jurisdiction in this case. However, Bullington is likely able to amend his complaint to demonstrate that Dixieland is estopped from asserting the statute of repose for claims related to the extractions on August 11, 2010. Dixieland Dental's Motion to Dismiss for lack of subject

matter jurisdiction is **DENIED**. Bullington is **ORDERED** to amend his complaint within fourteen days of the filing of this order to allege an adequate factual basis for this court's jurisdiction.

## II.       Personal Jurisdiction

### a.       Standard of Review

A federal court may only exercise jurisdiction over a defendant if the requirements of the state long-arm statute are met.[5] *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 (11th Cir. 1999). Georgia's long-arm statute, O.C.G.A. § 9-10-91, gives two grounds relevant here for asserting jurisdiction over a nonresident. First, when the nonresident "[t]ransacts any business within this state," and second, when the non-resident "[c]ommits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state . . . ." O.C.G.A. § 9-10-91(1), (3). "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). "Where, as here, the defendant submits affidavits to the contrary, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction . . . . Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002) (citations omitted).

---

[5] The requirements of the Due Process Clause of the Fourteenth Amendment must also be met. *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 (11th Cir. 1999). Dixieland asserts in a footnote that "[b]ecause the facts in this case do not meet the more stringent requirements of Georgia's long-arm statute, it follows that the requirements for due process are not met either." (Doc. 5 at 7 n.2); *but see Innovative Clinical & Consulting Servs., LLC v. First Nat. Bank of Ames*, 620 S.E.2d 352, 355 (Ga. 2005) (recognizing that the language of § 9-10-91 "would expand the personal jurisdiction of Georgia courts beyond that permitted by constitutional due process"). However, it fails to provide any independent analysis whatsoever of the Due Process Clause; all of its briefing analyzes Georgia's long-arm statute. (*See* Docs. 5; 19.) Accordingly, the Court restricts its analysis to the long-arm statute as well. *See Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 (10th Cir. 2001) ("A litigant who fails to press a point by supporting it with pertinent authority . . . forfeits the point. The court will not do his research for him." (quoting *Pelfresne v. Village of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990))).

###### b.     Transacts any business within the state

The "transacts any business" prong of O.C.G.A. § 9-10-91(1) is satisfied if: "(1) the nonresident defendant has purposefully done some act or consummated some transaction in this state, (2) if the cause of action arises from or is connected with such act or transaction, and (3) if the exercise of jurisdiction by the courts of this state does not offend traditional fairness and substantial justice." *Aero Toy Store, LLC v. Grieves*, 631 S.E.2d 734, 737 (Ga. Ct. App. 2006) (quoting *Robertson v. CRI, Inc.*, 601 S.E.2d 163, 166 (Ga. Ct. App. 2004)).

> That said, a defendant need not physically enter the state. As a result, a nonresident's mail, telephone calls, and other "intangible" acts, though occurring while the defendant is physically outside of Georgia, must be considered. . . . [W]e examine all of a nonresident's tangible and intangible conduct and ask whether it can fairly be said that the nonresident has transacted any business within Georgia.

*Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1264 (11th Cir. 2010).

Dixieland Dental transacted business in Georgia related to the cause of action in this case. Dixieland targets the State of Alabama with its advertisements. (*See generally* Doc. 5-1.) However, it maintains and advertises a "1-800" number for the purpose of facilitating phone calls from prospective patients who reside "out of town." (Doc. 12-1 at 17–18.) Bullington used the "1-800" number to call Dixieland from Georgia to schedule appointments on numerous occasions. (Doc. 12-14 at 2.) Dixieland was aware from the time of Bullington's first appointment that he was a Georgia resident. (Doc. 12-13 at 20 (Bullington's patient information form listing his Georgia address).) In sum, Dixieland communicated with Bullington in Georgia to arrange for the services it provided, derived $1,759 in revenue from Bullington, a Georgia resident, for its services (Doc. 12-13 at 6–7), all while knowing Bullington lived in Georgia and maintaining a phone number for the benefit of out-of-town patients.

The facts resemble those in *Power Guardian, LLC v. Directional Energy Corp.*, 904 F. Supp. 2d 1313 (M.D. Ga. 2012). As here, that case involved an out-of-state corporation that was not registered in Georgia, did not advertise in the state, and had no agents who travelled into the state. *Id.* at 1316. The plaintiff there purchased two generators from the defendant, and then met with the defendant's agents in Florida to discuss the sale. *Id.* at 1317. Subsequently, the parties discussed the sale over email, the defendant sent an invoice over

email, and the plaintiff paid by check through mail. *Id.* at 1318. The generators were eventually picked up by the plaintiff in Florida. *Id.* The court held that it had jurisdiction over the defendant. *Id.* at 1320. While no agent of the company ever entered the state, it "intentionally s[old] generators to a specific Georgia company," "exchanged electronic and personal communications" with the plaintiff, and "accepted payment from a Georgia company." *Id.* at 1320–21. "It can fairly be said that this conduct constitutes the transaction of 'any business,'" the court concluded. *Id.* at 1321.

Similarly here, Dixieland intentionally sold its services to Bullington knowing from at least the first appointment that he was a Georgia resident, spoke with him over the phone while he was in Georgia, discussed services with him face-to-face, and accepted significantly large payments from him, a Georgia resident. It makes no difference that the payment was made in person in another state in this case while through the mail from Georgia in *Power Energy*. In both cases, payment came from a Georgia entity after significant contact with the plaintiff in this state. *See also Wright v. Safari Club Intern.*, 706 S.E.2d 84, 86 (Ga. Ct. App. 2010) (Safari Club in Arizona could not show absence of jurisdiction when national advertisement was received by Georgia resident who made a purchase from the company in Nevada, then contacted company by email several times to discuss details of the sale). Dixieland's sale of services to Bullington is fairly characterized as "transacting any business" in Georgia.

Dixieland Dental contends that Bullington failed to allege that it transacted any business in Georgia in his complaint. (Doc. 19 at 7.) The Court disagrees. Paragraph six of Bullington's complaint lays the factual foundation to satisfy the long-arm statute. (Doc. 1-1 at 10.) While he focuses on O.C.G.A. § 9-10-91(3), Bullington alleges the Defendants "regularly seek business from Georgia residents," "derive substantial revenue from patients who are Georgia residents," and "send bills to Georgia residents." (*Id.*) Bullington's complaint need only contain "a short and plain statement of the grounds for the court's jurisdiction." F.R.C.P. 8(a). Those three alleged facts would weigh toward a finding of jurisdiction under O.C.G.A. § 9-10-91(1). *See Wright*, 706 S.E.2d at 86 (considering whether defendant solicited business from Georgia resident); *Power Guardian*, 904 F. Supp. 2d at 1320–21 (amount of revenue derived); *Diamond Crystal*, 593 F.3d at 1265 (billing

arrangement). Dixieland Dental should have been on notice that Bullington was alleging jurisdiction under subsection one as well as subsection three.

    **c.    Out-of-state torts**

Bullington may also satisfy the long-arm statute through O.C.G.A. § 9-10-91(3). That subsection grants the Court jurisdiction over a nonresident defendant who "[c]ommits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state . . . ." Dixieland Dental contends the threshold showing was not made: Bullington was not injured in Georgia. Rather, both the alleged tortious act and injury occurred in Alabama. (Doc. 5 at 8.) Dixieland analogizes to statute of limitations law in which Georgia courts have held that a misdiagnosis is coincident with the injury it creates. (*Id.* at 8–9); *Surgery Associates, P.C. v. Kearby*, 405 S.E.2d 723, 724 (1991). Bullington argues that the alleged misreading of the x-ray was "negligence," not a misdiagnosis. (Doc. 17 at 17–18.)

As an initial matter, the Court agrees with Dixieland that Bullington's claim related to the events allegedly occurring on September 10, 2013 is one of misdiagnosis. Bullington's complaint alleges Dr. David N. Strength misread his x-ray as "normal," when it actually revealed a developing area of necrosis. (Doc. 1-1 at 15.) When a doctor gives a patient a non-threatening diagnosis, but the patient turns out to have a serious condition which is allowed to fester, the patient would have a misdiagnosis claim. *Amu v. Barnes*, 662 S.E.2d 113, 116 (Ga. 2008). The Court does not find an appreciable difference between telling a patient his condition is "normal" and telling him he has a nonthreatening condition. Both are incorrect diagnoses that conceal a danger to the patient.

    However, the injury from the misdiagnosis occurred in Georgia, not Alabama. "In most [misdiagnosis] cases, the injury begins immediately upon the misdiagnosis due to pain, suffering, or economic loss sustained by the patient from the time of the misdiagnosis until the medical problem is properly diagnosed and treated." *Kaminer v. Canas*, 653 S.E.2d 691, 694 (Ga. 2007) (quoting *Frankel v. Clark*, 444 S.E.2d 147 (Ga. Ct. App. 1994)). There is a well-established exception to that general rule when a patient "has a relatively benign and treatable precursor medical condition which, as a proximate result of being misdiagnosed, is left untreated and subsequently develops into a much more serious and debilitating

condition." *Amu*, 662 S.E.2d at 117. "In order for this exception to apply," meaning the injury would arise subsequent to the misdiagnosis, "not only must there be evidence that the [patient] developed a new injury, but [he or she] also must 'remain [] asymptomatic for a period of time following the misdiagnosis.'" *Id.* at 116–17 (quoting *Amu*, 650 S.E.2d at 292).

Bullington was not complaining of any pain, suffering, or economic loss from the necrosis when he saw Dr. David N. Strength for the tooth extractions on September 10, 2013. (Doc. 1-1 at 15.) At that time, the necrosis was only beginning to develop. (*Id.*) Bullington began experiencing significant pain in early 2014, which led to the allegedly correct diagnosis on March 10, 2014. (*Id.* at 17.) Because, at the time of the misdiagnosis, Bullington had an allegedly asymptomatic, treatable condition, the "injury" did not occur until 2014 in Georgia when the symptoms became apparent.

The Court must then decide whether Dixieland Dental "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state . . . ." O.C.G.A. § 9-10-91(3). Only one of the prongs is relevant here. Dixieland does not render any services in Georgia. Bullington asserts Dixieland engages in a persistent course of conduct by making phone calls into Georgia. (Doc. 17 at 8.) However, the statute requires that the course of conduct take place "in this state." Dixieland's phone calls came from Alabama, and communication into the state does not suffice under § 9-10-91(3). *Huggins v. Boyd*, 697 S.E.2d 253, 255 (Ga. Ct. App. 2010) ("long history of sending out-of-state harassing e-mails" into Georgia insufficient for jurisdiction).

The remaining question, then, is whether Dixieland Dental "solicits business . . . in this state." The Court concludes that it does not. Dixieland has a single office, located in Alabama. (Doc. 5-1 at ¶ 3.) It advertises on TV, though only on channels headquartered in Alabama. (Docs. 5-1 at ¶ 5; 12-12.) It sponsors local sports teams in Alabama and markets itself on TV as the dental office chosen by south Alabama residents. (Docs. 5-1 at ¶ 8; 12-6.) It does not advertise via billboards or signs in Georgia. (Doc. 5-1 at ¶ 7.) It does not mail marketing materials into Georgia. (*Id.* at ¶ 10.) Bullington contends that because the TV stations, while headquartered in Alabama, also broadcast into Georgia, it constitutes solicitation. (Doc. 17 at 7.) But it is "well settled" in Georgia that an out-of-state defendant has not "engaged in purposeful business activity in this state merely because he has

advertised products for sale in national trade magazines circulating in this state." *Flint v. Gust*, 351 S.E.2d 95, 96 (Ga. Ct. App. 1986), *rev'd on other grounds*, 356 S.E.2d 513 (Ga. 1987) (analyzing O.C.G.A. § 9-10-91(1) jurisdiction); *see Turley v. Vaudeville Cafe, LLC*, No. 1:10-CV-2284-JEC, 2011 WL 3844361, at *3 (N.D. Ga. Aug. 26, 2011) (applying the same rule to § 9-10-91(3) jurisdiction). The same logic applies here. Dixieland Dental cannot be considered to have solicited Georgia customers when, by its advertising strategy and the content of its advertisements, it is apparent the company was solely targeting Alabama residents. The mere fact that Georgians constitute a sizeable portion of Dixieland's customer base does not demonstrate otherwise. Bullington has presented no evidence that Dixieland solicited those customers or that they became customers due to Dixieland's TV advertisements.

Bullington asserts that Dixieland Dental "developed and distributes maps showing Georgia residents how to travel to its offices for dental services." (Doc. 17 at 8.) Bullington submitted a copy of the map into evidence. (Doc. 12-8.) It shows, in very general terms, the highways to take to get to bordering towns in Georgia, Florida, and Alabama. However, Bullington has not produced any evidence showing how, where, or when these maps were distributed.

Finally, the "1-800" number does not dictate a different outcome. While Dixieland admitted the number was maintained to facilitate calls from potential customers who were "out of town," (Doc. 12-1 at 17–18), making it easier to communicate with out-of-state customers is not the equivalent of soliciting them. The phone number is more probative under § 9-10-91(1). There the Court focuses, in part, on the communication between the parties during the course of their business relationship. *See Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1264 (11th Cir. 2010). Maintaining a phone number designed to facilitate additional communication with a plaintiff who resides in Georgia weighs toward a finding that Dixieland transacted business in the state. Conversely, the solicitation prong addresses the defendant's actions before entering into a business relationship. *See Solicitation*, *Black's Law Dictionary* (10th ed. 2014) ("The act or an instance of *requesting* or *seeking* to obtain something" (emphasis added)). Providing a "1-800" number, without intentionally advertising that number to out-of-state residents, is not a solicitation.

**III      Conclusion**

Based on the foregoing, Bullington's Request and Application for Hearing on Defendant's Motion to Dismiss (Doc. 15) is **DENIED**. Dixieland Dental's Motion to Dismiss (Doc. 5) is **DENIED**. Bullington is **ORDERED** to amend his complaint by **Wednesday, October 5, 2016**, to allege an adequate factual basis for this court's jurisdiction regarding the statute of repose.

**SO ORDERED**, this 21st day of September, 2016.


**/s/ W. Louis Sands**_____
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**